IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SCHLEAR,** | : CIVIL ACTION |
| *Plaintiff,* | : |
| v. | : NO. 22-1843 |
| **CARPENTERS PENSION AND ANNUITY FUND OF PHILADELPHIA AND VICINITY,** | : |
| *Defendant.* | : |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                        May 18, 2023

Plaintiff Robert Schlear is a participant in Defendant Carpenters Pension and Annuity Fund of Philadelphia ("Defendant" or "Carpenters Fund"). This Fund constitutes an "employee pension benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff contends that Defendant arbitrarily and capriciously denied his Waiver of Suspension of Benefits application, which would allow him to retire with a full pension while continuing to work in his current employment.

Defendant has moved to dismiss Plaintiff's Complaint, arguing that because Plaintiff's request for relief would violate the clear mandate of the Internal Revenue Code, Defendant's interpretation of the Plan and denial of the Waiver was reasonable and within its discretion. Upon consideration of both parties' positions, I will deny Defendant's Motion.

### I.    FACTS IN THE COMPLAINT

The following facts are set forth in the Complaint.[1]

---

[1] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and

Plaintiff Robert Schlear was born on October 22, 1968, and since 1989, has been an ongoing participant in Defendant Carpenters Pension and Annuity Fund of Philadelphia and Vicinity ("Defendant").  In 2003, Plaintiff began working for The Riff Group, LLC ("RG"), a multi-specialty contractor that is licensed to provide building and construction, installation, and moving and storage services in Pennsylvania, New Jersey, Delaware, and New York.  Specifically, Plaintiff was hired as the Operations Manager in RG's Installation Services Division, a key managerial position. (Compl. ¶¶ 8–11.)

In 2019, Plaintiff became President of RG's Installation Services division where he oversees all aspects of the operation of the Installation Services Division.  At no time during his employment with RG did Plaintiff work as a carpenter or replace any active union carpenter.  Plaintiff's executive managerial skills and knowledge of RG's business operations have entitled him to compensation as an owner by sharing in a percentage of RG's annual profits, in addition to his base wages, based on the direct financial performance of the Installation Services Division. (Id. ¶¶ 12–14.)

In the summer of 2021, Plaintiff informed RG members Mary Ann Schmidt and George W. Schmidt (collectively, the "Schmidts") that he hoped to soon retire.  Plaintiff nonetheless agreed to continue working for RG in the same position.  Shortly thereafter, Plaintiff spoke with a representative from Defendant Carpenters Fund about the possibility of receiving early retirement pension benefits while continuing to work for RG.  The representative advised that, according to the Carpenters Fund Director, Joe Obuchowicz, Plaintiff could apply for a Waiver of Suspension of Benefits, which would allow him to start to collect his pension while maintaining his current employment.  On November 30, 2021, Obuchowicz confirmed that Plaintiff was eligible to begin collecting his pension under the Carpenters Fund's early retirement rules based on Plaintiff's age of fifty-three and his thirty-two years

---

determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

of credited service as a Carpenters Fund participant. Obuchowicz provided a Waiver of Suspension of Benefits application for completion by Plaintiff and RG. (Id. ¶¶ 15–18.)

On December 20, 2021, Plaintiff submitted a completed Waiver of Suspension of Benefits application (the "Application") to Defendant for a retirement date of February 1, 2022. Plaintiff submitted a revised application two days later and included correspondence from the Schmidts explaining the unique nature of Plaintiff's position and other factors warranting approval of the Application. On December 30, 2021, Defendant denied the Application pursuant to Section 3.12 of the Carpenters Pension and Annuity Plan (the "Plan"), discussed *infra*. Defendant did not otherwise explain the basis for its denial (the "12/30/21 Denial"). (Id. ¶¶ 21–22.)

On February 1, 2022, Plaintiff timely appealed the 12/30/21 Denial and explained that, in continuing to work for RG, he would not be performing any carpentry-related work that would necessitate a suspension of benefits under 29 C.F.R. § 2530.203-3. He further emphasized that numerous "retired" employees younger than 59 ½ performing carpentry-related work had successfully applied for waivers of suspensions of benefits under the Plan. (Id. ¶ 22.)

On February 28, 2022, Defendant denied the Appeal and upheld the 12/30/21 Denial (the "2/28/22 Denial"). Defendant cited Internal Revenue Code Section 401(a)(36), which provides that rules against in-service distributions prohibit the payment of retirement benefits to retirees who continue to work for their prior employers unless they are 59 ½ or older (Plaintiff was 53 at the time) and re-cited to Section 3.12(a) of the Plan. (Id. ¶ 24.)

Plaintiff alleges that Defendant routinely approves waivers of suspensions of benefits under the Plan for working individuals who are not only younger than 59 ½, but who also perform carpentry-related services. For example, in 2016, Defendant approved a waiver of suspension of benefits for Tim Allen, who was younger than 59 ½ and continued performing carpentry-related services in his role as Superintendent of Trades at Comcast Spectacor. In 2020, Defendant approved a waiver of suspension

3

of benefits for Jon Fitzpatrick, who was younger than 59 ½ and continued to perform carpentry-related services in his role as Carpenter Foreman at Philadelphia D&M. (Id. ¶¶ 26–27.)

Plaintiff avers that Defendant's denial of his Application was based, in part, on a desire for retribution against Plaintiff and RG in connection with prior disputes between Defendant, Plaintiff, and RG. (Id. ¶ 32.)

On May 12, 2022, Plaintiff filed suit against Defendant alleging denial of benefits in violation of Section 502(a)(1)(B) of the Employee Retirement Income Security Act. Specifically, Plaintiff asserted that the denial of his application for waiver of suspension of benefits was arbitrary and capricious. Defendant subsequently filed the current Motion to Dismiss.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away

4

those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

### III. DISCUSSION

Plaintiff claims that Defendant violated § 502(a)(1)(B) by denying his Waiver of Suspension of Benefits Application under the Plan. Under that section, a participant in an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim under this section, a plaintiff must allege that he was eligible for benefits under the plan, that the defendant wrongfully denied those benefits, and that, in doing so, the defendant violated § 502(a)(1)(B). Manning v. Sanofi-Aventis, U.S. Inc., No. 11-cv-1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012).

Defendant responds that, as a matter of law, Plaintiff cannot show that its denial of Plaintiff's Waiver of Suspension of Benefits Application was an abuse of discretion.

#### A. **Standard of Review for a Decision Under the ERISA Plan**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the United States Supreme Court held that "a denial of benefits challenged under [§ 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. When a plan grants its administrator such discretionary authority, "[t]rust principles make a deferential standard of review appropriate." Id. at 111. In turn, a denial of benefits is reviewed under an "arbitrary and capricious standard." Orvosh v. Program of Group Ins. For Salaried Emps. of Volkswagen of Am. Inc., 222 F.3d 123, 129 (3d Cir. 2000). Likewise, when an administrator acts pursuant to her authority "to construe the terms of the plan," or to

5

act as a finder of facts, the arbitrary and capricious standard is applied. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120–21 (3d Cir. 2012).

Here Article X, Section 2 of the Trust Agreement provides such discretionary authority by providing that:

> The Trustees shall have the sole and exclusive power and the duty to take all actions and to make all decisions necessary or proper to carry out the Plan. The Trustees shall have exclusive authority and discretion to the fullest extent permitted under ERISA to:
> 1. Determine whether an individual is eligible for any benefits under the Plan and Trust;
> 2. Determine the amount of benefits, if any, an individual is entitled to under the Plan and Trust;
> 3. Interpret all of the provisions of the Plan and Trust;
> 4. Interpret all of the terms used in the Plan and Trust;
> 5. Require any person to furnish such information as they may request for the purpose of the proper administration of the Plan as a condition to receiving any benefits under the Plan; and
> 6. Make and enforce such rules and regulations and prescribe the use of such forms as necessary for the efficient administration of the Plan.

(Restated Agreement and Declaration of Trust, art. 10 § 2.) The parties agree that this language triggers application of the deferential abuse of discretion standard of review. Fleisher, 679 F.3d at 120–21 (finding deferential abuse of discretion standard applies where policy vests administration with "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve any questions arising in the administration, interpretation, and application of the Group Policy.").

### B.  Whether Defendant's Decision Was Arbitrary and Capricious

"While review under the arbitrary and capricious standard is extremely deferential, it is not without 'some teeth' and does not mean 'no review.'" Clauss v. Plan, 196 F. Supp. 3d 463, 474 (M.D. Pa. 2016) (quoting McDonald v. Western–Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003)). "An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Miller v. Am. Airlines, Inc., 632 F.3d 837, 845

(3d Cir. 2011) (quoting <u>Abnathya v. Hoffman-La Roche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993)). An administrator's interpretation is not arbitrary if it is "reasonably consistent with unambiguous plan language." <u>Fleisher</u>, 679 F.3d at 121 (quoting <u>Bill Gay Enters. v. Gourley</u>, 248 F.3d 206, 218 (3d Cir. 2011)). "When a plan's language is ambiguous and the administrator is authorized to interpret it, courts 'must defer to this interpretation unless it is arbitrary or capricious.'" <u>Id.</u> (quoting <u>McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan</u>, 240 F.3d 139, 143 (3d Cir. 2003)). "A term is ambiguous if 'it is subject to reasonable alternative interpretations.'" <u>Id.</u> (quoting <u>Taylor v. Cont'l Grp. Change in Control Severance Pay Plan</u>, 933 F.2d 1227, 1233 (3d Cir. 1991)). "The determination of whether a term is ambiguous is a question of law." <u>Taylor</u>, 933 F.2d at 1232. Courts defer to an administrator's findings of facts when they are supported as "substantial evidence," defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Fleisher</u>, 679 F.3d at 126 (quoting <u>Soubik v. Dir., Office of Workers' Comp. Programs</u>, 366 F.3d 226, 233 (3d Cir. 2004)). Further, when reviewing an administrator's factual determinations, the court is limited to the evidence before the administrator when he made the decision being reviewed. <u>Id.</u> at 121.

In conducting the arbitrary and capricious analysis, a court should review procedural factors underlying the administrator's decision-making process together with structural concerns regarding how the ERISA plan was funded. <u>Miller</u>, 632 F.3d at 845. The structural inquiry focuses on how the particular ERISA plan was funded. <u>Id.</u> Thus, one of the factors a court should consider in determining if a plan administrator has been arbitrary and capricious is whether a conflict of interest exists such that a plan administrator both determines eligibility and pays benefits. <u>See</u> <u>Metro Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 108 (2008). The procedural inquiry "focuses on how the administrator treated the particular claimant." <u>Miller</u>, 632 F.3d at 845. Procedural irregularities that can give the court reason to doubt its fiduciary neutrality and can weigh in favor of a finding that a decision was arbitrary and capricious, including reversal of an administrator's position, reliance on requirements extrinsic to the plan, non-compliance with the ERISA statute and accompanying regulations, or failure to address all relevant

7

considerations. Bey v. Reliance Standard Life Ins. Co., No. 16-cv-2326, 2017 WL 660866, at *4 (E.D. Pa. Feb. 17, 2017). In addition, the disparate treatment of similarly situated individuals by a plan could be found to be arbitrary and capricious. Foley v. Int'l Bhd of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797, 805 & n.11 (E.D. Pa. 2000) (citing DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 519 n.3 (3d Cir. 1997)); see also Varhola v. Doe, 820 F.2d 809, 816 (6th Cir. 1987) (holding that differential treatment of similarly-situated employees, without some reasonable explanation for the differing treatment, could render a decision arbitrary and capricious). "Ultimately, [the court] 'determine[s] lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together.'" Miller, 632 F.3d at 845 (quoting Glenn, 554 U.S. at 117).

The Plan provision at issue states as follows:

> 3.12 Waiver of Suspension, In-Service Distributions and Grandfathering.
>
> (a) The Board of Trustees, or a subcommittee of one or more members, may in its sole and exclusive discretion, temporarily waive suspension of benefits or permit an in-service distribution based on labor need or other considerations relevant to the purposes of the suspension rules. The waiver may be limited to a specific retiree or class or group of Retirees or a specific job site, time frame or class or group of work without affecting the enforcement of suspension rules in other cases.
>
> (b)
>
> 1. The Board of Trustees may consider granting waivers of the suspension of benefits provisions of the Plan provided a retiree satisfies all of the following conditions:
>
>> a. The individual has retired and stopped working for an Employer that has an obligation to remit contributions to the Plan, and had no intention at the time of retirement to return to work or had a pre-arranged agreement or understanding with an Employer that has an obligation to remit contributions to the Plan to return to work;
>>
>> b. Has not worked in the Construction Industry for a minimum of twelve (12) months following such retiree's initial benefit commencement date;

   c. The retiree and his/her proposed Employer submit to the Plan Office a completed application for a waiver that meets all of the requirements established by the Board of Trustees;

   d. The retiree and the Employer establish to the satisfaction of the Board of Trustees that there is an industry need for the work and for that retiree to perform that work due to a lack of qualified active members of the Union; and

   e. The requested waiver period is for a maximum of six (6) months within a twelve (12) month period.

2. The Board of Trustees may consider granting waivers of the suspension benefits provisions of the Plan provided a retiree satisfies all of the following conditions for an in-service distribution:

   a. The participant is at least age 59 and six (6) months on his/her retirement start date, or waiver commencement date, if later;

   b. The participant and his/her last Employer submit to the Plan Office a completed application for an in-service distribution that meets all of the requirements established by the Board of Trustees;

   c. It is established to the satisfaction of the Board of Trustees that there is an industry need of the work and for that retiree to perform that work due to a lack of qualified active members of the Union;

   d. The participant continues to work for the last Employer that he/she worked for immediately prior to his/her retirement or immediately prior to his/her submission of an application for an in-service distribution; and

   e. The participant will be working in a non-bargaining unit position for a contributing employer or as an instructor or supervisor at a United Brotherhood Carpenters affiliated training/apprenticeship program.

3. The Board of Trustees may also in its sole and exclusive discretion grant waivers on a case by case basis based upon the specific facts and circumstances presented to the Board of Trustees at the time the application is submitted. Granting of a "special case" waiver shall not be deemed precedential or otherwise binding on the Board of Trustees in any future applications for a waiver.

(Compl., Ex. C, Plan § 3.12.)

Plaintiff contends that Defendant's decision to deny his Waiver of Suspension Application pursuant to § 3.12(a) was arbitrary and capricious because he has not worked as a carpenter during his current employment and would not be performing any carpentry-related work going forward. He notes that the plain language of Section 3.12(a)—the provision cited by Defendant for its denial of Plaintiff's application—expressly authorizes Defendant to waive suspension of benefits under certain discretionary circumstances, without imposing any mandated scenarios wherein Defendant must deny applications. Plaintiff further claims that Defendant informed him that he was eligible to collect his pension under the Carpenter's Fund's early retirement rules, and that numerous "retired" employees younger than 59 ½ who were performing carpentry-related work successfully applied for waivers of suspensions of benefits, thus suggesting disparate treatment. Plaintiff also alleges that Defendant has a structural conflict of interest because it both accepts pension contributions and makes decisions whether participants like Plaintiff are eligible for those benefits. Finally, he asserts that Defendant had an improper, pretextual motive for denying his request for early retirement pension benefits based on a "desire for retribution" against Plaintiff and his employer due to prior disputes. (Compl. ¶ 32.)

Defendant's Motion urges that I should find, as a matter of law, that the Complaint fails to plausibly allege facts on which the administrator's decision could be deemed arbitrary and capricious. For the following reasons, I decline to find that Defendant's arguments allow for dismissal under the Federal Rule of Civil Procedure 12(b)(6) standard.

<u>First</u>, Defendant posits that Plaintiff, who was fifty-three years old at the time, sought to "retire" while simultaneously being able to work for his last employer. Such an allowance, according to Defendant would require Defendant to act in direct contravention of the clear provision of the Internal Revenue Code ("IRC"), 26 U.S.C. § 401(a)(36), as interpreted by the Internal Revenue Service. That provision unequivocally prohibits a tax-exempt qualified pension plan from permitting a participant who

10

is under the age of 59.5 to "retire" from his current employer but thereafter continue to work for that employer unabated while simultaneously collecting his pension benefits. As Defendant's Board of Trustees has a fiduciary obligation to ensure that Defendant operates within the confines of the IRC and ERISA so as to ensure continued tax-exempt status, Defendant urges that the relief sought herein would run counter to that mandate.

Defendant's reliance on the Internal Revenue Code for purposes of its Motion, while not necessarily misplaced, is perhaps premature. Section 401(a) of the Internal Revenue Code provides that a trust forming part of a pension plan for the exclusive benefit of the employees constitutes a "qualified," *i.e.* tax-exempt, trust. Subsection 401(a)(36) further states that "[a] trust forming part of a pension plan shall not be treated as failing to constitute a qualified trust under this section solely because the plan provides that a distribution may be made from such trust to an employee who has attained age 59 ½ and who is not separated from employment at the time of such distribution." 26 U.S.C. § 401(a)(36). According to IRS regulations, "[a] pension plan within the meaning of section 401(a) is a plan . . . to provide for the payment of definitely determinable benefits . . . after retirement." 26 C.F.R. § 1.401-1(b)(1)(i). "A pension plan does not qualify if it permits distributions of the employer's contributions or increments thereon prior to severance of employment or termination of the plan." IRS Ruling 71-437 (Jan. 1, 1971). In denying Plaintiff's Waiver application, Defendant's administrator referenced this IRS regulation, noting that allowing the waiver would result in the Fund not being qualified for tax purposes. Defendant now cites to numerous cases wherein the courts have found that a denial of waiver of suspension of benefits, where the applicant was not fully retired and had not reached normal retirement age, was not an abuse of discretion.

While Defendant's case citations could eventually help substantiate the reasonableness of the administrator's decision, it is notable that all of the cited cases were decided at the summary judgment stage of litigation after a review of the full administrative record. See Chavis v. Plumbers & Steamfitters Local No. 486 Pension Plan, No. 17-cv-2729, 2020 WL 1503679 (D. Md. Mar. 27, 2020); Metzgar v.

11

U.A. Plumbers and Steamfitters Local No. 22 Pension Plan, No. 13-cv-85, 2019 WL 1428083 (W.D.N.Y. Mar. 28, 2019); Meakin v. Calif. Field Ironworkers Pension Trust, No. 16-cv-7195, 2018 WL 405009 (N.D. Cal. Jan. 12, 2018), aff'd 774 F. App'x 1036 (9th Cir. 2019); Maltese v. Nat'l Roofing Indus., No. 16-cv-11, 2016 WL 7191798 (N.D. W. Va. Dec. 12, 2016).

The case before me is at the motion to dismiss stage meaning that all allegations in the Complaint must be taken as true. See Manning v. Sanofi-Aentis, U.S., Inc., No. 11-cv-1134, 2012 WL 3542284, at *4 (M.D. Pa. Aug. 14, 2012) (finding that the court "owes no deference to a plan administrator at the motion to dismiss stage, regardless of the level of deference provided as the litigation progresses."). As such, "[s]o long as plaintiff 'pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged,' the Court must accept as true all factual allegations made in the complaint, including allegations of an improper decision made by a plan administrator." Id. (quoting Iqbal, 556 U.S. at 679).

I find that Plaintiff's Complaint creates a plausible inference that Defendant's decision was not necessarily premised on the IRS considerations. According to the Complaint, Defendant's representative "confirmed that Plaintiff was eligible to collect his pension under the Carpenter's Fund's early retirement rules." (Compl. ¶ 18.) The Complaint further alleges that, notwithstanding the implications of the IRS regulation, Defendant "routinely" approves of waivers of suspensions of benefits under the Plan for working individuals who are not only younger than 59 ½, but also perform carpentry-related services—an allegation which suggests that Defendant has discretion to approve such waivers in spite of IRS regulations.[2] (Id. ¶ 26.) Plaintiff goes on to cite two examples of such approvals that are

---

[2] Indeed, in Chavis—one of the cases cited by Defendant in support of its argument—the court originally denied the defendant's motion to dismiss where the complaint alleged that the defendant confirmed that plaintiffs' employment was permissible and would have no impact on their ability to claim retirement benefits. Chavis v. Plumbers & Steamfitters Local 486 Pension Plan, No. 17-cv-2729, 2018 WL 4052182, at *14 (D. Md. Aug 23. 2018).
    Similarly, in Metzgar—another case cited by Defendant—the defendants originally moved to dismiss the plaintiffs' ERISA challenge, arguing that the plaintiffs had not fully retired and thus were not entitled to pension benefits. The court declined to dismiss the complaint finding that the allegations of the complaint—that plaintiffs had affirmatively disclosed to defendants their intent to continue post-retirement employment

12

representative of, but not necessarily exclusive of, other such approvals. (Id. ¶¶ 26–27); see Smith v. Rochester Tel. Bus. Mktg. Corp., 786 F. Supp. 293, 299 (W.D.N.Y. 1992) ("The consistency of prior interpretations of a plan provision is a factor that the courts may consider in determining whether a given interpretation is arbitrary and capricious."), aff'd, 20 F.3d 1236 (2d Cir. 1994). Moreover, unlike the above cases, Plaintiff avers that Defendant's denial of his Application was based, in part, on a desire for retribution against Plaintiff and RG in connection with prior disputes between Defendant, Plaintiff, and RG.[3] (Id. ¶ 32.) Such allegations are a sufficient basis on which a factfinder could infer that Defendant's decision was arbitrary and capricious.

Second, Defendant challenges Plaintiff's allegations regarding other individuals who were approved for pension benefits while they continued to work for their last employer even though they had not yet reached the age of 59 ½. Defendant attaches and cites to affidavits from Carpenters Fund Director Joe Obuchowicz, who describes the circumstances of the two individuals identified in the Complaint to explain why their waivers were granted and what happened after the grant. Defendant contends that, even if it erred in approving payment of benefits to these two individuals while they continued to work for their last employers, those improper decisions would not render the decision on Plaintiff's benefits arbitrary and capricious. Otherwise, Defendant claims that it would be "straitjacketed" into granting benefits because of past practices. See Foley v. Int'l B'hd of Elec. Workers Local Union 98 Pension fund, 271 F.3d 551, 558–59 (3d Cir. 2001).

---

and defendants subsequently amended the plan to disqualify plaintiffs—"render[ed] suspect" defendant's claim that they were exercising their discretion to apply existing plan language. Metzgar v. U.A. Plumbers & Steamfitters Local 22 Pension Fund, No. 13-cv-085, 2014 WL 1767715, at *6 (W.D.N.Y. May 2, 2014).

[3] In a supplemental filing, Defendant attaches the recent case of Aracich v. Board of Trustees of the Employee Benefit Funds of Heat & Front Insulators Local 12, No. 21-cv-9622, 2022 WL 4357966, at *1–2 (S.D.N.Y. Sept. 20, 2022). In Aracich, the court found that the defendant's decision to deny the plaintiff's waiver of suspension of benefits application was reasonable and consistent with the Trustees' obligations to maintain the pension's tax-qualified status. The court granted a motion to dismiss on that ground. Aside from the fact that this case is not binding, nothing in the Aracich decision suggests that the complaint—like the one here—contained allegations that the pension had approved a waiver for similarly-situated employees or that the decision was premised on other arbitrary grounds.

Defendant's argument is misplaced in two respects. Primarily, the Complaint identifies these two individuals as exemplary only, not as a comprehensive list of all similarly-situated individuals who have received a waiver. Second, in adjudicating a Rule 12(b)(6) motion, I may consider only the allegations in the Complaint, exhibits attached to the Complaint, matters of public record, and documents that form the basis of a claim. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). The attached affidavits do not fall into any of these categories. Accordingly, I may not consider them and must instead take as true the Complaint's allegations that these individuals were given waivers to receive benefits while continuing to work even though they were under 59 ½. Whether the circumstances of their waivers were different or somehow incorrect is a matter more appropriate for summary judgment.

In short, "[t]o determine 'reasonableness' in an arbitrary and capricious analysis, courts have considered *inter alia*, (a) whether the defendant has consistently interpreted a term in a plan in a particular way, (b) whether industry practice is consistent with the defendants' interpretation, (c) whether any legal authority supports their assertion that the interpretation is 'reasonable.'" Harrison v. Metro. Life Ins. Co., 417 F. Supp. 2d 424, 437 (S.D.N.Y. 2006). Absent a record prepared after adequate discovery, any determination as to the reasonableness of Defendant's decision would be premature. As Plaintiff has adequately pled the existence of an ERISA plan, that he was a beneficiary under the Plan, and that Defendant's denial of benefits was unreasonable and based on pretextual reasons, I decline to dismiss Plaintiff's ERISA claim at this juncture.

### III. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss will be denied. An appropriate Order follows.